May it please the Court. My name is Kenneth Wydaw and I'm representing the appellant Derek Cramer. We request that five minutes be reserved for rebuttal, please. This Court, through Judge Ambrose, in December of 2008 and primarily in particular issue before taking action, the Court had granted a Certificate of Appealability and had requested that court-appointed counsel for Mr. Cramer be appointed. This was in December of 2008. I am your man. Thank you. Yes, was the District Court ever made aware of the fact that the Pennsylvania Supreme Court had granted allowance to file non-court junk out of time? Judge, from looking at the record, it does not appear that Chief Judge Cain had the opportunity to see that order. I looked high and low in the record and I think Judge Ambrose gave a lot of leads on the two orders that were entered at that point that gave direction to our search. I could find nothing in there that gave me the impression that Judge Cain would simply know about that and do an end run, if you will, on the issue. I just can't conceive that that would happen. Isn't there a simple way to resolve it? Is there a way to have, to now put that before Judge Cain and try to resolve it that way? Maybe to wait for a motion to reconsider it. It seems to me if there's something there which is crucial to the argument that wasn't before the District Court, maybe that's the easiest way to resolve this thing. That is the case, Your Honor. I clearly think Judge Cain would have had, she had the opportunity to consider that, would have gone ahead and made a decision at that point and considered the petition at that stage. Well, certainly allowed the certificate. Even more basic than that, isn't the, even if it were considered from a, from a AEDPA standpoint, isn't the question as to whether or not a non-pro-tunk application could ever be properly, could be properly filed under 2244 D2. That certainly is one of the issues also, Judge Cowen. I don't think there's any doubt about that. Don't we have decisions which say that non-pro-tunk is not properly filed? I think the decisions we've looked at, and I took a look at that issue as well, that's something that Mr. Kramer brought up in some of his documents that he filed before the Court. And the cases that we're looking at appeared to be where the petitioner had run out of time and was simply trying, in desperation perhaps, to try to file something with the Court to toll the statute. Here, in this particular... Without the Court's permission? I'm sorry? Without the Court's permission? Yes, without the Court's permission, in an effort at trying as a desperate last measure to say, let's, let's bring a halt to this. We got to stop this one-year statute of limitations from running. So let's file this petition non-pro-tunk. Here, given the circumstances, I think the Pennsylvania's Supreme Court was quite justified in following its own court rules. Obviously, it does have a court rule on that particular subject that deals with that very subject, which is very important to the Court, and that is a court rule that's quite specific on that, and that is the Pennsylvania Rules of Appellate Procedure, Rule 105, A and B, Sections A and B. That's very important, and it talks to the Court. It tells the Court that a liberal construction and modification of the rules can be warranted. And the notes to that particular rule clearly indicate that statutory time limits under this particular chapter do not apply to appeals or to other judicial review by the Supreme, Superior, or Commonwealth Courts. And that Rule B, which really brings to an end, it says you cannot, on certain appeals, go forward with this. You cannot grant this type of relief. It does say that the rule is not intended to affect the power of the Court to grant relief in the case of fraud or breakdown in the processes of the Court. Well, that leads us back again to the Superior Court decision and the events of March 2006. Even more basic than that, instead of going back to the Pennsylvania Court, what would be wrong with us sending it back down to the District Court and having them consider whether it should be equitably told? We've allowed that 24-D to be equitably told. It's not a statute which is absolute in that regard. Correct. So why shouldn't we send it to the District Court and have them reconsider the time and whether or not the time was equitably told when he never knew what the State Court did, and then seasonably perfected his appeal? I think that's certainly one alternative for sending it back. Would that be to your satisfaction? I think I would still prefer, instead of using equitable tolling, I really don't think, as I look at the case and look at the record, that the Court needs to deal with Part 2. That's the equitable tolling. I still think this is timely. Now, if the Court simply doesn't want to venture into this nunk-pro-tunk area, and this is probably what brings us here today, is that issue. If that be the case... Now that the Supreme Court has finally waded in and agreed that there is equitable tolling... Well, I think with the Holland case that came down in June of this year, at that point, clearly the Court now has dealt with this issue of equitable tolling. It's given the guidelines, but I think they're very consistent with what the Courts of Appeal have been looking at for quite some period of time, the two-part test. And I think even using the equitable tolling, I think that Mr. Kramer will prevail and that the District Court should consider the petition for a writ of habeas corpus at this point. Whether you go back on Part 2, what I call equitable tolling, or whether you go back on the timeliness issue, I prefer to see the Court actually just address the timeliness issue and go forward on that by looking at that, again, that application to the Pennsylvania Supreme Court. The fact that the Court retroactively, if you will, wiped out a period of time that otherwise was going to be tacked on, and clearly that additional five months would have clearly put Mr. Kramer over the deadline at this point. But as we look at it right now, 271 days have been consumed in waiting that could be used on the statutory tolling at this point. 271 days. So we're not close to the 365-day, one-year statute of limitations. So I think on the timeliness issue, this Court can send it back on that and feel comfortable doing so. But if not, I think the other section of the case, the equitable tolling, it could stand on that as well, given the unusual circumstances we have here. As an appellate court, could we ourselves adjudicate that it's equitably tolled during that period of time? Yes, Your Honor. Will we be going out on a plan? I'm sorry, I do not believe so, Your Honor. I do not believe so. If you wanted to send it back to Judge Kain and have the judge make that ruling and then bring it up at that point if necessary, that certainly would be the, let me say, the safe path. And that perhaps would be the better way to do it. As you all know, the case was sent back to Judge Kain the second time at this point for the entry of an order. Apparently there was some reasons that had to be given for the denial of the certificate. That was sent back to her. I suppose in all fairness to the Chief Judge, it would be helpful for the Court to send the matter back and say, please take into account this additional issue, which apparently was not brought to your attention, and that Was there any procedural or substantive issues raised by Kramer's petition for writ of habeas corpus other than this timing? I mean, what's out there? What's at issue? I took a look at the petition, but I have to tell you I didn't spend a great deal of time going over it, and I've not spoken with him except through communications letters and so on. He's a lifer, isn't he? I'm sorry? He's a lifer. Yes, he is. He's in Michigan now, too, by the way. He's no longer in the Pennsylvania system. Yeah, but the habeas corpus still would apply. It was fine when he was here. No, it still applies, Your Honor. Yeah. Thank you very much. Thank you. Mr. Zamkowicz, did I come even close to your name? Good morning, members of the Court. My name is James Zamkowicz. Nothing close. Okay. York County DA's office. Right. Basically, our position here is that the judge did rule correctly. In terms of prior law on this particular issue, this court, the Third Circuit in Douglas v. Horn, 2004, it was a site at 359 F3D257. The court stated, We certainly did not intend that NARA be applied so broadly that by filing a nunk-protunk petition for leave to appeal, a petitioner could obtain further tolling after the time for discretionary review of a judgment had expired. Your Honor, he had already gone through all of his direct review. He had had Superior Court review. He'd had Supreme Court review. This was on a post-conviction collateral relief action. How can you say something is untimely when the Pennsylvania court itself invited it to be filed nunk-protunk? This is not someone who came in out of the blue and wanted to come in nunk-protunk. The court itself said, Look, we understand you didn't have an opportunity to file an appeal, and we think you should bring it in for us to review it. And they told him to do it. So how could that be untimely under 2244? Your Honor, that's what the staff at the Prothonotary's office of the Superior Court had said that since he's out of options, what can he do? Well, in terms of his state court appeals, that's the only thing he could conceivably do. In terms of his overall structure, he could also have filed his habeas corpus at that time. The main issue is on March 2nd. He's out of time if he were to file the habeas. The question is, he wanted to get his time within the 2244. And the court itself said, File this appeal. They invited him to do it. The Prothonotary told him what his options were, but it wasn't an authorization saying that it's going to be a valid appeal. They allowed him to do it. They granted authority to file a petition. If he had come here without doing that, he would have said, look, you should have filed the petition with the Pennsylvania Supreme Court, asked them for permission to file Monk-Protonk. You can. No, I'm saying, but had he come here, you're saying he could have come here without going back and trying to file out of time. Had he done that, my guess is we would have said, you need to go back to the state court and ask permission. You should have done that. And failing to do that, you have a procedural default and you're out of luck. Doesn't his petition trying to file Monk-Protonk with the Pennsylvania Supreme Court, even though it was out of time, further the whole idea of comedy wrapped up in the federalism thing he's allowing or trying to allow the Pennsylvania Supreme Court to have first crack at the underlying constitutional error that he wants to then bring into federal habeas? What's wrong with that? This was the issue that was addressed by the U.S. Supreme Court in Paceford v. DiGuillermo. They basically decided that in cases such as this where the state court appeals were basically barred due to being late, you can't just go back. Indeed, this same defendant, after subsequent to filing his habeas while the federal habeas was pending, went back and continued to file late state court appeals. He filed a late PCRA appeal, which was denied by the trial court judge when, upon having an evidentiary hearing, the defense counsel showed up and informed the court that he could not present evidence because his two witnesses for actual instance could not be found. All that he had were two street names, no contact information, no way to find this. Is any of this on the record? Yes, Your Honor. I'm not certain whether it's part of the court's record. However, it is referenced in the opinion issued by Judge Kennedy, submitted to the Court of Common Pleas of York County, June 21, 2007. It's the 1925A opinion. My timing, the times I have are somewhat different. Tell me if these are wrong. On August 12, 2004, the Pennsylvania Supreme Court denied allowance of appeal from Kramer's life sentence. Right so far? On November 11, 2004, the conviction became final when the time for filing a writ of cert passed and the statute of limitations began to run. Correct, Your Honor. Kramer then filed his first PCRA action on February 8, 2005. That stops the statute. Yes, Your Honor. On March 29, 2006, the Superior Court denied Kramer's appeal for post-conviction relief. Correct, Your Honor. On April 28, 2006, the period for filing leave to appeal with the Pennsylvania Supreme Court expired. The statute would have begun to run again on that date. However, in June 2006, Kramer sought allowance of appeal on the advice of the state Supreme Court clerk. Right? On July 31, 2006, the Pennsylvania Supreme Court granted leave to file a petition for allowance of appeal within 30 days. Kramer filed the petition on October 30, 2006 in compliance with that extension. Are you with me so far? Yes, Your Honor. When the statute began to run again on December 15, 2006, after the appeal was denied, Kramer had about nine months left in the limitations period. Even if you subtract the 94 days between April 28, 2006, when the PCRA denial became final, and July 31, 2006, when the Pennsylvania Supreme Court granted leave to file an appeal, Kramer still had about six months to file his appeal after December 15. I don't understand what the problem is. Your Honor, there would be several disputes as to that. The first one. Which dates? The first one, Your Honor. The date of filing, the Superior Court's issuance of Order 329-2006, it's the position of the Commonwealth of Pennsylvania that the clock for habeas would have started then because it was not otherwise told by filing a further action for discretionary appellate review. Unlike the direct appeal, where the clock doesn't begin until the sentence becomes finalized, and therefore you have that additional time to file either a petition for al-Qaeda or a petition for certiorari. In this case, because it was a post-conviction collateral relief appeal, those additional timelines do not become involved unless the defendant makes use of them. Yeah, but that's when he sought allowance of appeal non pro tonque, and the Pennsylvania Supreme Court gave it to him. Well, Your Honor, the defendant Are you saying he shouldn't file on what the Pennsylvania Supreme Court did? He is saying that. The Pennsylvania Supreme Court never actually granted his allowance of appeal non pro tonque. He requested permission to file an application for the allowance of appeal non pro tonque. However, What did the Pennsylvania Supreme Court do on July 31, 2006? They gave him permission to file the application for the petition for al-Qaeda non pro tonque. However, Your Honor, in the Third Circuit, there had been a presumption created back in 1992 for situations such as this. The Third Circuit, referencing Caswell v. Ryan in case number 953 F2D 853, had stated there's a three point presumption. Number one, the non pro tonque al-Qaeda petition is perfunctorily denied without discussion. And indeed, on December 17, 2006, the al-Qaeda petition was denied without discussion. It was simply denied without any further information as to why it was denied. But what did the Pennsylvania Supreme Court do on July 31? Didn't they grant leave to file a petition for allowance of appeal within 30 days? They basically granted leave to open a docket, Your Honor. That's administratively how it happens, but her question is what did they legally do? They allowed him to file his petition for al-Qaeda relief, even though he was out of time for doing it, didn't they? Yes, Your Honor. However, that does not state the proceedings. You mean the Pennsylvania Supreme Court can do something that we say doesn't count? No, Your Honor. Indeed, in Pennsylvania, when the DA's office, for instance, files a non pro tonque petition to file a non pro tonque petition of al-Qaeda, regardless of whether or not that petition of al-Qaeda is granted or not, if we wish to stay, say, criminal proceedings, we need to file a separate motion to stay the proceedings because it's not a standard application for al-Qaeda. No, because he's out of time. Correct. And the whole nature of it is it remains out of time, and the Supreme Court can deny the petition for al-Qaeda based upon the untimeliness. But they didn't deny it. They granted the leave. No, they granted leave to file the non pro tonque petition. However, they did not state why they denied the actual al-Qaeda petition. But the issue is if they granted leave to file it, how can we say it wasn't properly filed? The Pennsylvania Supreme Court says, okay, you can ask us to grant you al-Qaeda, and you're saying that we need to find that his request to grant for a petition for al-Qaeda wasn't properly filed, even though the Pennsylvania Supreme Court said you have permission to do that. Yes, Your Honor, because per that case I cited to Caswell v. Ryan, the defendant has to overcome a presumption. There's the first aspect that the petition has to be when the petition for al-Qaeda non pro tonque, not the request for permission to leave to file that, when the actual petition for al-Qaeda non pro tonque is denied perfunctorily, where the Supreme Court does not say we're denying this purely on the merits or we're denying this for other reasons. The court then has to check whether, number one, whether the untimeliness is apparent. And in this case, by nature of it being a non pro tonque petition for al-Qaeda, the untimeliness is apparent. And also the issue presented has to, if the, where there's insufficient evidence that the filing meets an exception to the filing deadline, the denial of al-Qaeda can be presumed to be based on a procedural default. But they didn't deny al-Qaeda. Your Honor, they did deny al-Qaeda. They did. On December 17, 2006, the Pennsylvania Supreme Court denied al-Qaeda purely by saying that the Supreme Court hereby denies al-Qaeda on this issue. So you go back to the original date that he failed to appeal. That's correct, Your Honor. Well, let me ask this. Even if we accept your position as to timing, why should we send this back? This is a situation where a man didn't know he had a right to, didn't know the court ruled against him. That's what the record reflects. And he seems to be a prime candidate for equitable tolling. Why shouldn't we send it back to the district court for it to make a determination as to whether or not the 2244-D is equitably tolled in this case? The man is faultless, if he can prove that. Your Honor, in this case, attorney, this is an action of attorney error. Indeed, the. Well, would that be, would that be something to try for equitable tolling? Unfortunately, Your Honor, no. The U.S. Supreme Court in Horn v. Fahey, Case 534-US-944 of 2001, stated that attorney error, miscalculation, or other mistakes do not rise to extraordinary circumstances required for equitable tolling. This is not an attorney error. This is court error where he did not receive notice of the court's, this is not a malpractice case where he can now sue his lawyer for malpractice. This is a case where he didn't know the court ruled against him. So why shouldn't we have the district court evaluate whether or not he's a candidate for equitable tolling? Because in this case, Your Honor, it is an issue of the attorney's action. In this case, the defense counsel, attorney Rick Robinson, had sent correspondence to the superior court. That correspondence informed the superior court that he had an e-mail address. The superior court had given notice that it would be releasing all of its decisions based upon that e-mail address. Now, attorney Rick Robinson, in the letter that he sent to the defendant in this case, which is at page 28 of the reproduced record submitted by the defendant, or I guess petitioner in this matter, he uses letterhead that he sends to the defendant, which even includes this e-mail address. He says that attorney Rick Robinson, at the time, 2006, that this happened, he does not own a computer. However, even on the letterhead that he's using to send to the defendant, he provides the e-mail address, saying this is the direct e-mail address to attorney Rick Robinson. Why doesn't he own his computer? Pardon? Lots of people have e-mail addresses that don't own computers. Correct. However, in his correspondence to his client, he says that he did not receive this e-mail because he doesn't have a computer and he doesn't check e-mail. That's attorney error. This attorney provided the court with an e-mail address on his correspondence, which is evidenced on page 28. But then he also said that in the past he'd always gotten correspondence from the court through mail.  via e-mail, but he knew he didn't have a computer, so he wasn't going to get the e-mail. That's not the situation. I don't believe it was intentional. I believe it was a minor attorney mistake. However, the superior court had sent out notices saying that when you provide the superior court with an e-mail address, they will use the e-mail address to serve non-precedental opinions upon the parties. How did he provide? Just because it was on his letterhead? It was on his letterhead and it expressly states, this is page 28, Richard Robinson direct e-mail address, e-mail R. Robinson at MPL-law.com. This is in addition to his law firm's general e-mail address. That's on his letterhead. Pardon? That's on his letterhead. Yes, this is actually on his letterhead. Does the record say that he told the court, send my correspondence to me via e-mail, or is it that the court saw the e-mail address and their practice was, since they had an e-mail address, to send it via e-mail? The court said that the court actually responded to Rick Robinson, and that is also included. Responded via e-mail. My apologies, Your Honor, if I may. Yes, on page 23, there's the letter, page 23 of the reproduced record. It includes the letter that was sent to Attorney Robinson, where the Pennsylvania Superior Court states that the Superior Court did use the e-mail address, the R. Robinson MPL-law, and it was added to their case management system. It was. . . What's the date of that letter? This is May 5, 2006, saying that, okay, the Superior Court actually indicates in their letter that they received notice that it had been, that the e-mails that they had sent to Attorney Robinson were received at the e-mail address in question. Okay. I'm still not sure where that gets us. It becomes less of an issue of the court making error and an issue of purely attorney error. And if the issue is attorney error. . . What's attorney error? That's what I'm trying to get to. The attorney error wasn't him saying to the court, look, court, send me this stuff via e-mail. And then a few months later he goes, oh, my goodness, I don't have a computer, and I don't check my e-mail. That was not a good move on my part. That's not the scenario. He sent them his letterhead. On the letterhead it has an e-mail address, which apparently is a totally meaningless e-mail address because he never checks it and he doesn't have a computer. But the Superior Court saw the letterhead, saw the e-mail address on it, and said, oh, wow, we have an attorney with an e-mail address. We're going to send him notices via e-mail.  Is that right? That's correct, Your Honor. And then on May 30, 2006, he receives, I guess via mail, the order from the Supreme Court denying the post-conviction relief. And that was the first time he is saying that he had any awareness of the fact that the PCRA had been denied. Well, that would have been the denial by the Superior Court, affirming the trial court's decision. Right. But, yes, at that point he himself became aware that the order had gone out. Our position is with the discretionary nature of the Pennsylvania Supreme Court's decision that the defendant at the district court level would have had to overcome the presumptions in those cases that I referenced. Well, he's saying he, the attorney Robinson, in 16 years of practice here, always received opinions from the Superior Court via postal mail. So, again, why wouldn't this be? It's not like anyone's setting up a situation to buy more time or may not even be an attorney here from our exchange here. Why wouldn't it go back to Judge Cowen's inquiry into equitable? The Superior Court had sent out notices to make attorneys aware that they would be sending out all of their opinions by e-mail, Your Honor. This was not something that Rick Robinson, while he might have been aware of it himself. Well, the notice, when I asked you the date of that notice, you said it was May 5th. Well, that was the letter in response to Attorney Rick Robinson's inquiry into the case as to why he did not receive the actual copy of the order. The actual notice by the Superior Court, I don't know exactly when they had sent that out ahead of time off the top of my head. And that went out via e-mail. That went out by a regular mail. You know? It went out by e-mail. It wouldn't do him a lot of good. Your Honor, it's our position that he gave the Court that e-mail address. Well, you keep saying that. It's not like he's called up the Court and said, Hey, guys and gals, I've got an e-mail address. Send me all your stuff via e-mail. It's just that his stationery has his e-mail address printed on it. Probably like every other attorney on the planet Earth nowadays, their e-mail address is printed on, or an e-mail address is printed on the stationery. So in that sense, he did give the Court an e-mail address. You're right about that. And our position is that it's the attorney's duty to make sure that he can have clear communication with the Court. If he's providing e-mail addresses that don't exist, then that's attorney error and that's not a defect of the Court itself. Even if it's attorney error, and I'm not saying it is or is not, why would equitable tolling not be considerable in a case such as this, where we're not dealing with a direct appeal or a civil case where the client can sue for damages or other type of relief, where you have a situation where this is the end of the case, if we hold your position to be true. He's in jail for the rest of his life. This is the end of the case. Whereas in other cases where we're talking about attorney error, you have other relief available to you. Well, as shown by defense actions on by keeping, by continuously filing even late appeals, if there was an issue that arose that satisfied one of the statutorily or judicially created exceptions to the timeliness requirements, he could use those. However, as shown by his actions, again, in the state court level subsequent to his filing of the habeas, even when he does that, he's unable to actually meet his burden. And our position is that at the district court level and before the Commonwealth of Pennsylvania courts, he failed to meet his burdens. You mean on the merits you're talking about? On the merits and in terms of overcoming any timeliness requirements. Well, timeliness is a good argument here that he did pursue his remedy as best he could, pro se, and that once he found that there was a problem here, he in a very timely manner tried to get the matter resolved by the Supreme Court. I mean, isn't there a fact issue here as to equitable tolling, which is not just attorney error. It's a hodgepodge of facts which a reasonable district court judge could or maybe could not find it should be told. Your Honor, our position is that the defendant, when he received his superior court opinion back on December 17th of 2006, he would have still had, by our calculations, until January 2 of 2007 to file his habeas in a timely manner. And beyond the timeliness, he didn't file it in January. He didn't file it in February. He filed it halfway through March. So it's month after month after month of time going by without any type of error. Our position is that had he filed in the first month or so roughly after the Supreme Court's decision denying the Nunk-Protunk petition for Alcotter, then possibly there would be a reasonable argument for the equitable tolling. But after month after month after month of nothing from the defendant. Well, you're talking about a few months, but you don't deny, and your briefing does not deny, that if we told the time after which he didn't know that there was an adverse decision about his PCRA and the time that actually perfected it and so forth, that it would be within one year. Yes, Your Honor. It would be seasonable. That's correct. So the question, the whole question is, if it's told equitably, he would be timely under 2244, if told. I'm not saying it should or shouldn't be. If told, it would be timely. Our position, of course, being that it's not timely. Thank you very much. Let's try one more time. Say it for me, please. Zamkutowicz. Zamkutowicz. Okay. Thank you. With the Court's permission, I will wait for a moment. All right. Thank you. We are always a welcome response. Whenever a lawyer says that, it's like hyphens on the violin. Thank you very much. I'll take the matter under advisory. I think both counsels agree on an argument. The next matter.